IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JAMIE COBAT,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Civ. No. 3:13-cv-01866-CL

ORDER

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Jamie Cobat ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") under section 1614(a)(3)(A) of the Social Security Act. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## BACKGROUND

    Plaintiff was born on February 4, 1966, and was 43 years old at the time of alleged onset date. Tr. 22. She has a tenth-grade education and is able to communicate in English. Tr. 193, 22. She has past relevant work experience as a janitor and a house cleaner. Tr. 22. On April 15, 2010, Plaintiff filed an application for Social Security Disability and Supplemental Security Income. Tr. 10. She alleges disability beginning October 1, 2009, based on fibromyalgia, a nerve condition in her back, migraines, pain, numbness in her leg, PTSD, a hiatal hernia, and thyroid problems. Tr. 192. Plaintiff is insured through December 31, 2015. Tr. 10.

Page 1 – ORDER

These claims were initially denied on June 5, 2010, and denied upon reconsideration on October 21, 2010. Tr.10. Thereafter, Plaintiff filed a request for a hearing on October 29, 2010. Tr. 10. The hearing was held before an Administrative Law Judge ("ALJ") on March 8, 2012, Tr. 12, and the ALJ issued his unfavorable decision on April 4, 2012, Tr. 7. On August 15, 2013 the Appeals Council denied Plaintiff's request for review, making the ALJ's denial the Commissioner's final decision. Tr. 1. This timely appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);

> 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.
>
> 3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.
> 4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ found:

1. Plaintiff had not engaged in substantial gainful activity since October 1, 2009, the alleged onset date.
2. Plaintiff has the following medically determinable impairments: Chronic pain/fibromyalgia and anxiety not otherwise specified. Tr. 12.
3. Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1.
4. Plaintiff is unable to perform her past relevant work as a janitor or a house cleaner. (20 CFR 404.1565 and 416.965).
5. Based on the Plaintiff's age, education, work experience and residual functional capacity (as found by the ALJ, and detailed on page 5 of his decision. Tr. 14.), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969 (a)).

Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a

reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly discrediting Plaintiff's testimony and (2) improperly rejecting the opinion of Plaintiff's treating nurse practitioner Julie Serres.

### I. The ALJ improperly discredited Plaintiff's testimony.

When gauging a claimant's credibility, an ALJ must engage in a two-step process. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if such evidence exists, barring affirmative evidence of malingering,[1] the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A general assertion that the Plaintiff is not credible is insufficient. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's allegations. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

---

[1] The ALJ found no evidence of malingering in this case.

Plaintiff testified that she suffers from chronic pain, anxiety, post-traumatic stress issues, depression, and fibromyalgia. Tr. 37, 48. She takes daily narcotic pain medication and medication for anxiety. Tr. 40, 43. Her medications cause fatigue that requires her to lay down four or five times a day for fifteen to twenty minutes. Tr. 41, 43. With medication, she stated her pain level is an eight out of ten Tr. 42. She testified she could only sit for twenty to thirty minutes, stand for fifteen minutes, and walk one city block due to her pain. Tr. 41. Her anxiety causes her to become anxious, pace, cry, have difficulty breathing, and experience heart palpitations from six or seven times a day to an entire day. Tr. 42. She also testified to experiencing daily panic attacks lasting a few hours and having difficulty leaving the house due to her mental health. Tr. 43.

The ALJ found that Plaintiff's impairments could be reasonably expected to cause her alleged symptoms. Tr. 16. However, he found Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms not credible. Tr. 16. The ALJ provided four primary reasons for this determination: (1) Plaintiff's testimony is not supported by the treatment record, (2) Plaintiff's claims of debilitated functioning are inconsistent with her reports of actual functioning, (3) Plaintiff made inconsistent statements to clinicians and the Administration, which shed doubt on the reliability of her testimony, and (4) Plaintiff did not comply with recommended treatment. Tr. 16, 19. Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting her testimony. This court agrees.

### a. The ALJ erred in finding Plaintiff's testimony not fully supported by the treatment record.

The first reason the ALJ provides for discrediting Plaintiff's subjective testimony is that "the overall record and objective medical evidence do not support the alleged severity of the symptoms and limitations claimed by the claimant." Tr. 18. An ALJ may not discredit Plaintiff's

testimony solely "because no objective medical evidence support[s] [their] testimony," *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), but may consider a lack of objective evidence as one element in his analysis, *Burch*, 400 F.3d at 680; 20 C.F.R. § 404.1529. In making a credibility finding, the ALJ must also look to reasons "unrelated to the subjective testimony (e.g., reputation for dishonesty), conflicts between his testimony and his own conduct, or internal contradictions in that testimony." *Robbins*, 446 F.3d at 884.

First, the ALJ cites medical evidence from before Plaintiff's alleged onset date of October 2009. Tr. 16. Given that Plaintiff was not alleging disability prior to that date, it is not surprising that her treatment records from 2008 and early 2009 are not consistent with her symptom testimony. This evidence does not lend support to the ALJ's decision.

Second, the ALJ cites treating physician's observations as to Plaintiff's cognitive and neurological functioning. Tr. 17-18. In *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014), the ALJ pointed to treatment notes where the plaintiff was "upbeat," maintained "good eye contact," had "organized and logical thought content," and was able to maintain "focused attention." The Ninth Circuit held that these observations did not undermine the plaintiff's symptoms associated with depression and anxiety. *Id.* The court went on to explain that "the ALJ's reliance on [the physicians'] observations about cognitive functioning [was] misplaced" as the plaintiff did not allege any cognitive issues. *Id.*

Here, the ALJ cites comparable medical evidence regarding Plaintiff's cognitive functioning:

> On mental status examination, however, the claimant presented with normal posture and grooming, calm/alert motor activity, and good eye contact. Her facial expression was appropriate, and her speech was normal. The claimant's attitude was cooperative, her mood appropriate to the situation, and her affect appropriate. Cognitively, the claimant was generally intact. She displayed coherent thought processes and normal thought. The claimant was fully oriented and demonstrated satisfactory attention, intact memory and

intact insight, judgment, and abstractions. Despite this grossly normal performance on mental status examination, Ms. Till assessed a GAF score of 38.

Tr. 18. The ALJ also highlights other treatment notes where doctors observe Plaintiff "is in no acute distress," "generally alert," and "cooperative" with "normal mood and affect" and "normal attention span and concentration." Tr. 17. However, like the plaintiff in *Ghanim*, Plaintiff does not allege any cognitive or neurological impairments, and these notes do not speak to her fibromyalgia, chronic pain, or anxiety. As the relationship between her cognitive functioning and her impairments is quite attenuated, it is not clear how such evidence supports the ALJ's finding that the treatment record does not support Plaintiff's testimony.

Third, the ALJ notes Plaintiff reported being able to exercise in March of 2010. Tr. 17. Defendant bolsters the ALJ's finding in its brief by citing a chart note from Dr. Ballinger where Plaintiff stated she could walk and swim. (#23). However, "[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). Similarly, one or two isolated references in the record to physical exercise is not convincing evidence that the record does not support Plaintiff's testimony.

Fourth, the ALJ refers to an MRI from June 2011 showing mild degenerative changes in Plaintiff's lumbar spine to show the record does not support her symptom testimony. Tr. 17. It is a "[r]equirement of this circuit that an ALJ 'specifically identify the testimony she or he finds not to be credible and...explain what evidence undermines the testimony.'" *Holohan v. Massanari*, 246 F3d 1195, 1208 (9th Cir. 2001). Here, the ALJ summarizes the findings of the MRI and does not state specifically what testimony it undermines. The ALJ's failure to do so is error, particularly in light of the fact that mild degenerative changes in Plaintiff's lumbar spine are unrelated to her severe impairments of fibromyalgia and anxiety. Tr. 13.

Fifth, the ALJ notes "the record does not include evidence of a physical examination" after an October 2010 car accident. Tr. 17. Once again he does not identify what testimony this undermines. Furthermore, though the records were not included in the medical exhibits, a review of the hearing transcript suggests that Plaintiff did seek treatment after this accident. Without additional explanation, the ALJ's use of this lack of medical information is unclear.

Sixth, the ALJ cites Plaintiff's course of treatment to support his decision that her testimony is inconsistent with the treatment record. First, he cites two chart notes from treating physicians where Plaintiff declined injections to help with pain in her shoulder and low back. Tr. 17. These reasonably suggest that the pain symptoms Plaintiff experiences in her shoulder and back are not as severe as she alleges as "a person's normal reaction is to seek relief from pain." *Orn*, 495 F.3d at 638. Here, the ALJ did not err as he provided clear and convincing evidence the treatment record does not support Plaintiff's symptoms.

Finally, the ALJ suggests that Plaintiff's use of anxiety medication in the treatment record sheds doubt on Plaintiff's symptom testimony as to experiencing daily anxiety because she took it on an as-needed basis, "only when she had panic feelings". Tr. 17. However, the ALJ mischaracterized Plaintiff's statements by cherry-picking medical evidence from a January 25, 2011, appointment with Julie Serres, NP. Though Ms. Serres did write that Plaintiff took Xanax on an as-needed basis when experiencing panic symptoms, she also wrote that the Xanax was ordered to be taken up to three times daily for persistent anxiety and that Plaintiff took it minimally due to its side effects. Tr. 432, 430. While this may show Plaintiff does not take anxiety medication daily, it is clear from the record that her limited use is due to the medication's side effects rather than the frequency of her anxiety symptoms. This is consistent with her hearing testimony that she has daily anxiety symptoms and experiences side effects from her

medication. TR. 42-43. The record also shows Plaintiff's anxiety required increasingly aggressive pharmacological treatment as her alprazolam prescription increased from one tablet, one to two times per week, to one tablet to be taken up to three times per day as needed. Tr. 311. Thus, the ALJ's implication that Plaintiff's as-needed use of Xanax does not support her subjective symptoms is unsubstantiated by the medical evidence.

The objective evidence the ALJ cites to discredit Plaintiff's testimony actually tends to support her subjective complaints. The Social Security Regulations provide examples of the objective evidence ALJs should consider in determining the extent of an individual's limitations, including "evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption." 20 CFR 404.1529(c)(2); 20 CFR 416.929(c)(2). The Social Security Rulings further explain, "[w]hen present, these findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects." SSR 96-7p.

There are a few chart notes cited by the ALJ after the alleged onset date where Plaintiff's treating physicians note evidence of her pain. They observed tenderness in Plaintiff's neck and trapezius muscles as well as tenderness over her AC joint. Tr. 17. On exam, Dr. Rask noted a limited range of motion in Plaintiff's neck, an antalgic gait, a limp in her lower left extremity, an inability to walk on her toes, back tenderness, radiculopathy, and tenderness in eighteen out of eighteen fibromyalgia tender points. Tr. 18. In a subsequent appointment, he continued to note tenderness in the right greater trochanter and right S1 joint. Tr. 18. The evidence the ALJ provides to support his contention that the treatment record does not support her subjective symptoms actually contradicts such a finding.

While the ALJ may consider the lack of objective evidence as one of multiple factors in his credibility finding, the reasoning he provides must be clear and convincing. Though

Plaintiff's decision to forgo injections may shed doubt on the impact of her non-severe back and shoulder impairments, this alone is not sufficient to discredit all of Plaintiff's symptom testimony. Furthermore, this sort of analysis is likely inappropriate in this case. In *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004), where the plaintiff alleged debilitating fibromyalgia, the court held that "[t]he ALJ erred by effectively requiring 'objective' evidence for a disease that eludes such measurement." The Second Circuit also held that relying on a lack of objective evidence as to deficits in motor functioning or significant arthritis to discount Plaintiff's fibromyalgia symptoms was error. *Green-Younger v. Barnhart*, 355 F. 3d 99, 108 (2d. Cir. 2003). Here, the ALJ inappropriately required objective evidence of Plaintiff's fibromyalgia and anxiety, both of which are difficult to objectively measure. The ALJ has not provided clear or convincing reasons for discounting Plaintiff's testimony, and the treatment record as a whole tends to support Plaintiff's symptoms.

### b. The ALJ erred in finding Plaintiff's claims of debilitated functioning are not consistent with contemporaneous reports regarding her actual functioning.

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping…does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722-23.

In his decision, the ALJ stated that "[t]he claimant's reported activities...show that she is not as limited as she claims and fully support the residual functional capacity." Tr. 16. In order to reach this conclusion, the ALJ mischaracterizes Plaintiff's reported activities. The ALJ states Plaintiff reported the ability to care for her children, but he makes no reference to Plaintiff's subsequent statement that she received help from her daughter in caring for her son. Tr. 18, 205. The ALJ also claims that Plaintiff stated she could clean the kitchen three times a week even though her August 2011 function report states she is only able to wipe down the counter and clean the sink three times a week. Tr. 19, 206. The ALJ states Plaintiff "regularly" picks up her son from school when she only claimed to do so from time to time. Tr. 19, 208. At the hearing, Plaintiff further clarified that she only picked up her son two weeks at a time. Tr. 44. When discussing her concentration, persistence and pace, the ALJ failed to acknowledge Plaintiff's statements as to her difficulties with memory, concentration, and completing tasks. Tr. 19, 209.

Plaintiff's statements are not inconsistent with her alleged limitations. In addition to the activities described above, Plaintiff noted only making frozen microwaveable meals because she cannot stand long enough to cook. Tr. 206. Her hobbies include reading and watching TV. Tr. 208. She said she is no longer able to walk or exercise, and her pain limits her ability to do house and yard work. Tr. 208, 206. She stated she could drive a car, but her children have to accompany her when she shops. Tr. 207. Her friends visit her at home every week, and she only leaves her house to "[pick] up her son from time to time." Tr. 208. While she claimed she could follow instructions and handle stress, she also noted an attention span of only fifteen to twenty minutes, difficulty with memory and concentration, and trouble finishing what she starts. Tr. 209-10. She also said she experiences fatigue because of her medication. Tr. 208.

At the hearing, she testified to needing to lie down four or five times a day for fifteen to twenty minutes. Tr. 41. She stated she could only sit for twenty to thirty minutes, stand for fifteen minutes, and walk one city block. Tr. 41. She cannot lift over five pounds. Tr. 41. She also experiences daily symptoms of anxiety. Tr. 42. These limitations are not inconsistent with her reported daily activities. Like the plaintiff in *Vertigan*, who could care for her disabled daughter, drive, and go grocery shopping, 260 F.3d. at 1050, Plaintiff's ability to do limited household chores, care for her son with the assistance of her daughter, drive occasionally, make simple meals, and follow instructions despite difficulty finishing what she starts are not sufficient to discount Plaintiff's testimony. Plaintiff does not have to be "utterly incapacitated" to be found disabled. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

A review of the record shows the ALJ mischaracterized Plaintiff's statements as to her daily activities in order to find Plaintiff not credible. Further, those activities are consistent with her symptom testimony. Accordingly, the ALJ has erred by not providing sufficient evidence to support his finding that Plaintiff's daily activities are inconsistent with her alleged impairments.

### c. The ALJ erred in finding that inconsistent statements contained in various reports to clinicians and to the Administration shed doubt on the reliability of the Plaintiff's testimony.

The ALJ may take into account inconsistencies in the claimant's testimony when making a credibility finding. *Ghanim*, 762 F.3d at 1163; *Tomasetti*, 533 F.3d at 1039. However, the reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d. 1294, 1296 (9th Cir. 1999). An ALJ may not mischaracterize information or take information from the record out of context in order to support his findings as to the plaintiff's credibility. *See Reddick* F.3d at 722-23.

In support of his decision, the ALJ only cites a January 2011 treatment note from Julie Serres, NP. The ALJ states that Plaintiff "*denied anxiety* and headaches, depression, memory loss, and numbness," and does not take alprazolam on a routine basis. Tr. 19. He then contradicts himself by stating she *reported anxiety* and episodic panic episodes. Tr. 19. A review of the record shows that the ALJ has misconstrued and cherry-picked the cited evidence. While Plaintiff did deny depression, memory loss, and numbness, she reported anxiety and panic episodes to Ms. Serres. Tr. 432. Earlier in the treatment note, Ms. Serres also stated that Plaintiff experiences "persistent anxiety." Tr. 430. Though she admitted to using alprazolam on an as-needed basis, she attributed her minimal use of this medication to its side effects. Tr. 431. This is consistent with her testimony at the hearing that she feels anxiety symptoms multiple times a day and experiences fatigue and nausea as a result of her anxiety medication. Tr. 42, 43.

The other inconsistencies the ALJ cites from this chart note are also unconvincing. At the hearing, Plaintiff testified to experiencing daily panic attacks. Tr. 43. The ALJ argues that this statement conflicts with the "episodic" panic attacks she reported to Ms. Serres. Tr. 432. In Defendant's brief, the Commissioner bolsters the ALJ's decision by citing Plaintiff's statement to Dr. Rask that she is "doing well with pharmacological treatment," which it argues is inconsistent with Plaintiff's allegations that she experiences side effects as a result of her pain medication. (#22). However, neither the ALJ nor Defendant develop this point further or provide additional evidence as to how "episodic" panic attacks or "doing well on pharmacological pain management" are inconsistent with Plaintiff's testimony as to her daily panic attacks or medication side effects. The implication that these are in conflict, without more, is not a clear or convincing reason for discounting Plaintiff's testimony.

### d. The ALJ erred when he used Plaintiff's failure to seek treatment to discount her testimony.

Evidence that a claimant has failed to seek or follow a prescribed course of treatment, if not adequately explained, can "cast doubt on the sincerity of the claimant's pain testimony" and support an ALJ's adverse credibility determination. *Fair,* 885 F.2d at 603. The Social Security Rulings state that an ALJ must "first consider any explanations that the individual may provide...that may explain...failure to seek treatment" when assessing the credibility of the individual's symptom testimony. SSR 96-7p. Justifiable reasons include but are not limited to an inability to afford treatment. *Smolen,* 80 F.3d at 1284

The ALJ found "the record shows noncompliance with recommended treatment" and cites a chart note from Dr. Rask in support of this finding. Tr. 19. Without discussing Plaintiff's reasons for non-compliance, the ALJ indicates that Plaintiff's decision to cease taking Cymbalta and not to pursue steroid injections for her bursitis makes it "reasonable to believe that the claimant's impairments were not as limiting as she alleged." Tr. 19. However, Plaintiff specifically stated at the hearing that her extreme fear and anxiety prevented her from pursuing injections. Tr. 40. She also noted experiencing extreme side effects as her reason for not taking Cymbalta. Tr. 465. The Social Security Rulings specifically list side effects of a medication that are worse than the symptoms of the condition as a justifiable reason for not pursing treatment. SSR 96-7p. Given that Plaintiff provided explanations for her treatment decisions, the ALJ was required to make a finding as to why those reasons were inadequate or unbelievable and has erred in not doing so.[2] Accordingly, none of the ALJ's reasons for discrediting Plaintiff's testimony are clear or convincing.

---

[2] My earlier finding, supra page 9, does not undermine my decision here that the ALJ has failed to provide clear and convincing reasons for rejecting Plaintiff's testimony. Evidence Plaintiff failed to pursue injections for her shoulder and back reasonably supports the ALJ's contention that the overall treatment

Page 15 – ORDER

## II.  Opinion of Treating Nurse Practitioner Serres

In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). However, nurse practitioners are defined as "other sources," not acceptable medical sources, and are thus entitled to lesser deference. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ need only give germane reasons to discount Ms. Serres's opinion. *Molina*, 674 F.3d at 1111. Here, the ALJ provided three reasons for doing so: 1) the explanations she provided were based on Plaintiff's subjective complaints, 2) her opinion is not supported by the treatment record, and 3) she did not provide any explanation for her opinion regarding Plaintiff's mental health in an August 2011 questionnaire. Tr. 21.

An ALJ may reject lay witness testimony if it is based on a claimant's symptom testimony that has been properly discounted as not credible. *Valentine*, 574 F.3d at 694. However, as discussed above, the ALJ has not properly discounted Plaintiff's testimony. Thus, this is not a germane reason for discounting Ms. Serres's testimony.

A nurse practitioner's opinion may also be rejected if it is unsupported by treatment notes or objective findings. *See Blodgett v. Comm'r Soc. Sec. Admin.*, 534 Fed.Appx. 608, 610-11 (9th Cir. 2013) (affirming the ALJs decision to accord little weight to "other" medical sources because their opinions were inconsistent with the treatment record). In a questionnaire from 2011, Ms. Serres opined that Plaintiff would be able to sit and stand for two hours in an eight hour work day, needs to change positions every 45 minutes, and needs lie down approximately

---

record does not support Plaintiff's symptoms. Therefore, we must defer to the ALJ on that issue. However, in failing to address Plaintiff's reasons for forging treatment for her bursitis the ALJ has erred in using this evidence alone to undermine Plaintiff's credibility.

Page 16 – ORDER

three times a day. Tr. 460-61. She noted symptoms of fibromyalgia, generalized muscle tenderness, back pain, joint stiffness, and anxiety. Tr. 458. She also cited muscle tenderness and joint stiffness as the objective or clinical signs that support these conditions and stated that Plaintiff would be absent from work more than four times per month. Tr. 458, 462.

The ALJ erred in finding that Ms. Serres's opinion from this questionnaire is not supported by the treatment record. First, Ms. Serres's opinion is consistent with a 2010 questionnaire completed by Dr. Hindmarsh, Plaintiff's previous primary care provider. Like Ms. Serres, Dr. Hindmarsh opined Plaintiff could sit and walk for two hours in an eight hour work day, would have to change positions every thirty minutes, and need to lie down three to four times a day. Tr. 401-02. He also found she suffers from generalized pain due to fibromyalgia, right leg pain, back pain, and chronic anxiety as demonstrated by generalized muscle tenderness and joint stiffness. Tr. 399. Second, a review of the record shows that Ms. Serres's opinion is largely supported by the medical evidence. An exam performed in January 2011 by Ms. Serres showed sciatic muscle tenderness and pain during a lumbosacral exam. Tr. 433. In an earlier appointment, Dr. Hindmarsh noted muscle tenderness. Tr. 344. Dr. Rask also noted back and hip pain upon examination and tenderness in all eighteen fibromyalgia points. Tr. 468, 465. Because Ms. Serres's opinion is largely supported by the medical records of multiple providers, the ALJ's reasoning is not sound.

An ALJ can reject a physician's opinion if it "is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. The ALJ specifically discounts Ms. Serres's opinion as to the limiting nature of Plaintiff's psychological impairments stated in the August 2011 check-box questionnaire. Tr. 21, 458. The ALJ properly gave little weight to this part of the form because Ms. Serres did not provide additional explanation as to how Plaintiff's

psychological factors impact her ability to work. Tr. 459. Such reasoning is sufficient to discount Ms. Serres's opinion regarding Plaintiff's mental health conditions. *Molina,* 674 F.3d. at 1111 ("the ALJ may 'permissibly reject[]... check-off reports that [do] not contain any explanation of the bases of their conclusions.")

Though the ALJ properly discredited Ms. Serres's opinion as to her mental health, he did not provide germane reasons for discounting her opinion with regards to Plaintiff's physical impairments. In doing so, the ALJ committed legal error. *Lewis v. Apfel,* 236 F.3d 503, 511 ("lay witness testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."). This error is not harmless because the court cannot confidently conclude that no reasonable ALJ could have reached a different disability determination had the nurse practitioner's reports been fully credited. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1056 (9th Cir. 2006). Accordingly, the ALJ's decision to reject her opinions must be reversed. *Lingenfelter,* 504 F.3d at 1045.

## REMAND

"The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler,* 761 F.2d 530 (9th Cir. 1985)). Generally, when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke,* 379 F.3d at 595 (quoting *INS v. Ventura,* 537 U.S. 12, 16 (2002)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further

administrative proceedings. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989); *Smolen*, 80 F.3d at 1292.

In some circumstances, where the ALJ has improperly credited testimony or failed to consider it, the Ninth Circuit has credited the rejected testimony. *See Smolen*, 80 F.3d at 1292; *see also Lester*, 81 F.3d at 834. However, in *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003), the Ninth Circuit determined that the "crediting as true" doctrine is not mandatory and the court has some flexibility in applying the doctrine. On this record, the Court exercises its discretion and remands for further proceedings. *See Stout*, 454 F.3d at 1053–54, 1056–57; *Connett*, 340 F.3d at 876.

////

////

////

////

////

////

////

////

////

////

////

////

////

## ORDER

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and the matter is REMANDED for further administrative proceedings. The ALJ should:

(1) Review Plaintiff's testimony and either accept it as true, applying its contents forward into his RFC determination and instructions to the vocational expert, or properly reject her testimony by presenting clear and convincing reasons.

(2) Review Ms. Serres's opinions as to Plaintiff's physical impairments in light of the credibility analysis and either accept it as true, applying its contents forward into his RFC determination and instructions to the vocational expert, or properly reject it by presenting clear and convincing reasons.

(3) Make a determination concerning Plaintiff's disability application, after conducting the analysis outlined above.

DATED this _____ day of July 2015.

MARK D. CLARKE
United States Magistrate Judge